O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL CENTER FOR JEWISH FILM,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>RIVERSIDE FILMS LLC; JOSEPH DORMAN; and DOES 1 through 20,<br><br>　　　　　　　Defendants. | Case No. 5:12-cv-44-ODW(DTBx)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR AWARD OF COSTS AND ATTORNEY'S FEES [42]** |

Before the Court is Defendants' Motion for Attorney's Fees and Expenses. (ECF No. 42.) On September 14, 2012, the Court granted Defendants' Motion for Summary Judgment finding that Defendants did not infringe Plaintiff National Center for Jewish Film's ("NCJF") copyrights under the fair-use doctrine. (ECF No. 41.) Subsequently, Defendants filed this Motion requesting attorney's fees and costs under 17 U.S.C. § 505. (Mot. 2.)

**A.　Defendants are entitled to attorney's fees and costs**

Courts have discretion under the Copyright Act to award the prevailing party attorneys' fees and costs under 17 U.S.C. § 505. In considering whether to exercise its discretion, the Court weighs the following non-exclusive factors: (1) degree of success obtained; (2) frivolousness; (3) motivation; (4) objective reasonableness of the factual and legal arguments; and (5) need for considerations of compensation and

deterrence. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 695 F.3d 946, 957 (9th Cir. 2012.) The Court considers each factor in turn.

### 1. Degree of success

Defendants argue that this factor weighs in their favor because they "achieved complete success in the action." (Mot. 2.) NCJF concedes that Defendants' success should weigh in Defendants' favor, but "only slightly." (Opp'n 6.) Based on the Court's prior ruling, the Court finds this factor weighs heavily in Defendants' favor because Defendants defeated all of NCJF's seven claims; in one fell swoop no less. (ECF No. 41.)

### 2. Frivolousness and objective reasonableness

Defendants argue that NCJF's claims were objectively unreasonable because the Court found that each fair-use factor favored Defendants. (Mot. 4.) NCJF asserts that the Court's acceptance of Defendants' fair-use defense does not render its claims objectively unreasonable and frivolous, because this would mean that "courts would award copyright prevailing parties attorneys' fees as a matter of right." (Opp'n 7.) Rather, NCJF avers that Ninth Circuit law on "montage" as transformative use "remains in flux" because NCJF was not aware of any authority distinguishing between "non-transformative news 'narration'" and "transformative 'scholarly commentary.'" (*Id.*) Thus, NCJF maintains that it "had a reasonable basis for arguing against Defendants' use as transformative." (*Id.*)

First, although NCJF insists its claims were not frivolous, precedent dictates that NCJF's position was objectively unreasonable. NCJF wrongly believed that Ninth Circuit law regarding transformative use is unsettled law. This belief conflicts with well-established law—transformative use depends on whether the new work "adds something new, with a further purpose or different character, altering the first with new expression, meaning or message." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994).

/ / /

Second, the objective reasonableness of NCJF's position should be evaluated in light of Defendant's attempts to educate and persuade NCJF. Defendants sent numerous letters and emails explaining to NCJF's executive director and counsel that NCJF's claims were unreasonable and cited at least 15 court decisions that supported Defendants' fair-use position. (Mot. 3.) Yet, NCJF never responded to the emails. (*Id.*) As a result, Defendants were forced to defend against NCJF's claims of copyright infringement. (Mot. 4.)

NCJF's opposition here repeats the same arguments against fair use as before—arguments that the Court rejected. The Court previously found that all fair-use factors favored Defendants. (ECF No. 41.) And none of the other six claims that NCJF brought before the Court survived the Motion for Summary Judgment, because they relied on or were preempted by the underlying copyright claim.

In light of the legal precedent and Defendants' efforts to educate NCJF, Court agrees that NCJF's position was objectively unreasonable, bordering on frivolous. Accordingly, the Court finds that both factors of frivolousness and objective reasonableness weigh in favor of Defendants.

*3.     Motivation*

Defendants contend that NCJF's litigation strategies evidence its improper motivation. (Mot. 6.) For example, NCJF "repeatedly sought to coerce Defendants into paying thousands of dollars in license fees." (*Id.*) But NCJF argues that it has demonstrated good faith motivation throughout the case and that attempting to settle the case for a $13,400 licensing fee was not coercion. (Opp'n 10.) Rather, NCJF avers that it was only attempting to settle the case, which "demonstrate[s] its good faith motivation to avoid litigation." (*Id.*)

Even though NCJF made some effort to settle the case at various stages of litigation, NCJF's actions throughout the litigation show improper motivation. For example, NCJF insisted that Defendants used NCJF's film materials in the Documentary. (Compl. ¶¶ 18, 20, 23, 24, 28.) Yet, with respect to two of the

allegedly copyrighted works in the lawsuit, NCJF's executive director Rivo specifically stated that Defendants did not use NCJF's copyrighted versions of the films:

> It is further disappointing to see that the clips you used [from] Yiddle with His Fiddle and Letter to Mother were taken from inferior sources. To see scratchy, blurred images from Yiddle with His Fiddle and Letter to Mother instead of the beautifully restored materials created and available from our Center was upsetting to watch. (Dorman Summ. J. Reply Decl. Ex. W at 8.)

Moreover, the Court finds that NCJF's employed some sharp discovery tactics that were designed to coerce settlement, requiring Defendants to expend additional resources to comply. (Mot. 6–7.)

On one hand, NCJF's $13,400 settlement offer appears to be in good faith— NCJF's pursuit of this case may have been elongated because of its pro bono counsel. But on the other hand, litigating a nuisance-value case inherently has aspects of bad faith; perhaps NCJF should have dismissed this case when settlement seemed unlikely. Instead, NCJF was willing to endure the litigation process (for which it was not paying), fully aware that litigation is onerous and likely expensive for defendants, hoping that it would prevail on summary judgment or at trial.

Based on this discussion, the Court finds this factor slightly favors Defendants.

*4. Compensation and deterrence*

Defendants argue that this factor weighs in their favor because they are small companies seeking to further Jewish culture and were willing to "stand on their fair-use rights" when the cost of litigation far outweighed the cost of settlement. (Mot. 8.) NCJF argues that "[s]mall dollar litigation should not be a factor in weighing this *Fogerty* factor." (Opp'n 12.)

As discussed above, though NCJF only sought $13,400 in damages for copyright infringement (and did so with pro bono counsel), Defendants exerted significant money in this litigation to stand pat on its fair-use defense. And

Defendants soundly prevailed. While the Court is obligated to uphold Congress's intent in enacting copyright laws, this obligation extends only to meritorious copyright infringement claims. To temper copyright holders' proclivity for unmeritorious nuisance-value copyright lawsuits, "an award of attorney's fees to the defendant is an appropriate sanction." *Assessment Techs. of Wis., LLC v. Wire Data, Inc.*, 361 F.3d 434, 437 (7th Cir. 2004). Without the prospect of an attorney's fee award, Defendants could have spent significantly less money "delet[ing] the clips from the Documentary or surrender[ing] to [NCJF's] license-fee demand." (Mot. 9.) Defendants should not be punished for asserting legitimate defenses such as fair use. Instead, such defendants should be encouraged via a prospective attorney's fee award. Thus, the Court finds this factor weighs in Defendants' favor.

Because all five factors weigh in favor of Defendants, the Court determines that Defendants are entitled to costs and attorney's fees.

**B.      Attorney's fees calculation**

The lodestar method provides a reasonable determination of attorney's fees, and is calculated by multiplying the number of hours expended in the litigation by the hourly rate to arrive at a lodestar figure. *Gracie v. Gracie*, 217 F.3d 1060, 1070 (9th Cir. 2000). This lodestar figure may then be adjusted to account for reasonableness of the time expended based on a weighing of the following factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; . . . (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *City of Burlington v. Dague*, 505 U.S. 557, 566 (1992) (the factor regarding the contingent nature of a fee agreement has been rejected).

/ / /

*1. Defendants' lodestar calculation is incorrect*

In its lodestar analysis, Defendants' counsel Shatzkin & Mayer, P.C. provides the following billing figures for its attorneys as of November 5, 2012:

| Name | Years out of Law School | Hours Billed | Hourly Rate | Total Fee (Rounded) |
|---|---|---|---|---|
| Karen Shatzkin | 35 | 170.1 | $495 | $84,200 |
| Debra M. Mayer | 25 | 78.4 | $450 | $35,280 |
| Mark N. Diller | 27 | 40.6 | $350 | $14,210 |

(Shatzkin Decl. ¶¶ 10, 13, 15.)

And co-counsel from Greenberg Traurig, LLP billed the following hours in this litigation:

| Name | Years out of Law School | Hours Billed | Hourly Rate | Total Fee (Rounded) |
|---|---|---|---|---|
| Vincent H. Chieffo | 40 | 92.6 | $800 | $74,080 |
| Laura Choi | | 3 | $260 | $780 |
| Staff | | 8.3 | | |

(Chieffo Decl. ¶ 10.)

Even though Chieffo, co-counsel in this case, states in his declaration that the staff at Greenberg Traurig, as of September 30, 2012, spent a total of 8.3 hours, Chieffo did not state which staff member billed for each hour. (*Id.*) The fees for the staff members varied from $270 per hour to $100 per hour. (*Id.* ¶ 6.) Thus, the Court cannot account for the amount actually billed by co-counsel's staff.

As a result, the Court takes the average among the four staff members listed in Chieffo's declaration to determine the actual cost for each hour that the staffs billed for this case. The four staff members are: 1) paralegal Karen Drapeau, $270 per hour; 2) paralegal clerk Michael Fairfax, $100 per hour; 3) paralegal clerk Carl D. Stewart, $100 per hour; and 4) technical specialist Phillip Paley, $180 per hour. (*Id.* ¶ 6.) On average, these staff members billed $162.50 per hour. So for the 8.3 hours that they spent on this case, the Court finds that they actually billed $1,348.75.

/ / /

Co-counsel from Greenberg Traurig also provided a 10% discount on the total fees billed to Defendants. (*Id.* ¶ 8.) But the total amount that Chieffo provided (including the 10% discount) is $71,502.30 (*Id.* ¶ 7), which conflicts with the number Shatzkin recites for Green Traurig: $72,704.70 (Shatzkin Decl. ¶ 25), which conflicts with the number the Court computed on its own: $68,587.88.

The Court finds that the correct lodestar figure is $202,277, which represents 393 hours at an average rate of $514.70 per hour.

*2. Counsel's expended hours is unreasonably high*

Based on the case history, the Court must inquire whether the 393 hours expended were reasonable. At the outset, the Court notes that some of these hours may have been unnecessary but for NCJF's tactics.

Since the case's inception on January 9, 2012, the only substantive motion filed in this case was Defendants' Motion for Summary Judgment. (ECF No. 25.) The case was over by September 14, 2012, when the Court entered an order granting Defendants' Motion for Summary Judgment. (ECF No. 41.)

What strikes the Court is the excessive billing relating to the Motion for Summary Judgment. Defendants' counsel billed a total of 246.2 hours, which is 63% of the time spent on the case, just for the Motion for Summary Judgment. (Shatzkin Decl. ¶ 16); (Chieffo Decl. ¶ 8.) And while the Court recognizes that this was the heart of the case, Defendants continually argued that NCJF's claims did not present a novel issue in copyright law; evidenced by their emails to NCJF's counsel addressing the application of fair use, citing at least 15 court decisions that supported Defendants' position. (Mot. 3.) Further, both Chieffo and Shatzkin are experts in copyright law. For instance, Chieffo was one of the attorneys in the seminal copyright infringement action, *Fogerty v. Fantasy, Inc.*, 510 U.S. 57 (1994). (Chieffo Decl. ¶ 5.)

Given counsel's expertise, which is reflected in their high billing rates, they should not have spent 246 hours on the Motion for Summary Judgment. Based on Defendants' representations, the Court thought that the bulk of the expended hours

1 would have been on discovery. But this was not entirely so—counsel spent 69.6
2 hours in discovery, including Rule 16 and 26 matters. (Shatzkin Decl. ¶ 16); (Chieffo
3 Decl. ¶ 8.) By allowing both a high billing rate and high billable hours, this would
4 amount to double billing. Upon review of counsel's billing records, the Court finds
5 that a 50% reduction in the time spent on the Motion for Summary Judgment is
6 proper; a reduction of 123 hours.

7 Second, Defendants spent 35.6 hours just for this Motion for Attorney's Fees.
8 The information that is needed for this Motion is within counsel's knowledge,
9 requiring no expertise, and certainly not requiring almost 10% of the entire case's
10 time. Much of the factual and legal support behind this Motion was previously
11 presented to the Court in the Motion for Summary Judgment. Courts have routinely
12 cut attorney hours when expended towards motions for attorney's fees. *See Johnson
13 v. Credit Int'l, Inc.*, No. C-03-100 SC, 2005 U.S. Dist. LEXIS 21513, at *8 (N.D. Cal.
14 July 28, 2005) (reducing attorney hours spent for a motion for attorney's fees from 8.9
15 to 2.3). Thus, the Court finds these hours excessive and should be reduced by 50%; a
16 reduction of 17.8 hours.

17 Accordingly, the Court cuts the billable hours by 140.8 hours, thereby reducing
18 the lodestar hours from 393 hours to 252.2 hours; a reduction of 36%. *See Andrews v.
19 Lawrence Livermore Nat'l Sec., LLC*, No. C 11-3930 CW, 2012 U.S. Dist. LEXIS
20 5571, at *8–11 (N.D. Cal. Jan. 18, 2012) (the court cutting 38% of the hours claimed);
21 *Montoya v. Creditors Interchange Receivable Mgmt., LLC*, CV 10-3037 PSG (Ex),
22 2011 U.S. Dist. LEXIS 64611, at *6–11 (C.D. Cal. June 17, 2011) (the court cutting
23 43% of the hours claimed).

24 So, the adjusted lodestar figure is $129,807.50, which represents 252.2 hours at
25 an average rate of $514.70 per hour. The Court finds this amount reasonable in light
26 of the discussion above—especially when considering counsel's success in this case
27 and its position as defense counsel in a copyright infringement action.
28 / / /

**C.    Costs**

Upon review, Defendants' costs appear reasonable based on the case activity. (Shatzkin Decl. ¶ 24); (Chieffo Decl. ¶ 9.)  Thus, the Court awards Defendants costs in the amount of $4,177.57.

**D.    Conclusion**

For the reasons stated above, the Court awards Defendants attorney's fees in the amount of $129,807.50 and costs in the amount of $4,177.57.

**IT IS SO ORDERED.**

December 14, 2012

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**